O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN DAVID O'NEAL, | NO. EDCV 11-695-DDP (MAN) |
| Plaintiff, | MEMORANDUM AND ORDER DISMISSING |
| v. | COMPLAINT WITH LEAVE TO AMEND |
| DEPUTY BAILEY, et al, | |
| Defendants. | |

Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, on May 10, 2011 ("Complaint").

Congress has mandated that courts perform an initial screening of civil rights actions brought by prisoners with respect to prison conditions and/or that seek redress from a governmental entity or officer or employee of a governmental entity. The Court "shall" dismiss such an action if the Court concludes that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks relief against a defendant who is immune from suit. 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). In screening such a complaint, the Court must construe the allegations of the complaint liberally and must

afford the plaintiff the benefit of any doubt.  *See* Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.  *Id.*; Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff is currently detained at the West Valley Detention Center ("WVDC") in Rancho Cucamonga in San Bernardino County.  (Complaint at 1.)  Defendants are the San Bernardino County Sheriff's Department ("Sheriff's Department") and Sheriff's Deputies Bailey, Franco, and Cumbess.  (*Id.* at 3-4.)

Plaintiff alleges that he is a vegan and a participant in the WVDC religious diet program.  (Complaint at 5.)  On June 27, 2010, he noticed eggs in his potato dish.  (*Id.*)  He notified Deputies Bailey and Cumbess but they refused to notify the kitchen.  (*Id.*)  Plaintiff threw the food on the floor.  (*Id.*)  The deputies did not punish him.  (*Id.*)  On June 28, 2010, plaintiff again noticed eggs mixed with his potatoes.  (*Id.*)  Once again, Deputies Bailey and Cumbess refused to notify the kitchen, and plaintiff threw his food on the floor.  (*Id.*)  Again, no disciplinary action was taken.  (*Id.*)  Later that day, plaintiff told Deputy Bailey that Mexican and white inmates were tired of seeing food thrown on the floor, and plaintiff accused Bailey of trying to stoke racial tensions by refusing to notify the kitchen of problems with plaintiff's religious diet.  (*Id.* at 5, Attach. at 1.)  That same day,

Deputy Bailey asked plaintiff if he wanted to make a statement in connection with a disciplinary report being prepared against him for throwing food on the floor. (Complaint, Attach. at 1.) Plaintiff accused Deputy Bailey of refusing to notify the kitchen of plaintiff's complaints about eggs in his food. (*Id.*)

At about 11:00 p.m., Deputies Bailey, Cumbess, and John Doe came to plaintiff's cell, handcuffed him and his cellmate, and directed the cellmate to leave. (Complaint, Attach. at 1.) Deputy Bailey then: "charged" plaintiff; threw him to the floor by his hair; pummeled him with "knee kicks" to the chest, back, and sides; slapped and punched his face; pulled his hair; and choked him. (*Id.*) Deputy Cumbess and John Doe punched plaintiff's legs and twisted his ankles. (*Id.* at 1-2.) The deputies then escorted plaintiff to administrative segregation. (*Id.* at 2.) En route, Deputies Cumbess and Bailey bent plaintiff's arms upward behind him and twisted his wrists and fingers. (*Id.*) Plaintiff sustained handcuff burns and nerve damage to his fingers, and his right thumb is still numb "in places." (*Id.*) Upon arriving in the administrative segregation unit, Deputy Bailey threw plaintiff down and continued kneeing, punching, slapping, and choking him. (*Id.*) Deputy Franco later joined in, punching plaintiff and twisting his ankles. (*Id.*) Plaintiff alleges that the deputies used force against him even though he did not disobey any orders. (*Id.*)

A nurse examined plaintiff's injuries, and he was prescribed Motrin. (Complaint, Attach. at 2.) He was interviewed about the incident, and his injuries were photographed. (*Id.*)

The next day, June 29, 2010, plaintiff was given a regular non-vegan meal. (Complaint, Attach. at 2.) Plaintiff told Deputy Franco that he was a Christian who received religious diet meals. (*Id.*) Franco told him to "take it or leave it" and refused to call the kitchen. (*Id.*) After Deputy Franco left, plaintiff threw the tray on the floor. (*Id.* at 2-3.) When Franco returned, he pepper-sprayed plaintiff. (*Id.* at 3.) Plaintiff alleges that he was not engaging in any behavior that violated jail rules at the time Franco pepper-sprayed him, and plaintiff contends that Franco pepper-sprayed him in retaliation for plaintiff having named Franco as a defendant in the action captioned O'Neal v. Brenes, EDCV 09-1884-DDP (MAN), which presently is pending in this court. (*Id.* at 3-4.) Plaintiff was not decontaminated, and he did not receive fresh linen until July 1, 2010. (*Id.* at 3.)

After these incidents, plaintiff suffered from insomnia, depression, and fear that the deputies would again beat and starve him. (Complaint, Attach. at 4.) He requested mental health treatment, but he was told that he did not meet the criteria. (*Id.*) Plaintiff was interviewed by clinician Giselle and clinician Black, but they did not provide treatment suitable for him as an assault trauma victim. (*Id.* at 4-5.) Plaintiff complains that the jail provides mental health treatment only for inmates who are "suicidal, homicidal, seeing things, or hearing voices." (*Id.* at 4.) He also complains that other persons were present during his interviews with Giselle and Black. (*Id.*)

Plaintiff asserts three claims for relief: (1) a First Amendment Free Exercise of Religion claim; (2) a Fourteenth Amendment excessive

force claim; and (3) an Eighth Amendment inadequate medical care claim.[1] (Complaint at 5, Attach. at 4.) He seeks compensatory and punitive damages, as well as injunctive relief directing the Sheriff's Department to develop mental health programs for victims of assaults occurring within WVDC. (Complaint at 6.)

**DISCUSSION**

**I. PLAINTIFF'S FOURTEENTH AMENDMENT EXCESSIVE FORCE CLAIMS AGAINST DEPUTIES BAILEY, CUMBESS, AND FRANCO WITHSTAND SCREENING.**

At this early stage of the action, the Court finds that plaintiff has stated excessive force claims against defendants Bailey, Cumbess, and Franco, in their individual capacities, based on factual allegations regarding the force they allegedly used against him on February 28, 2010, and Deputy Franco's pepper spraying of plaintiff on February 29, 2010. Because plaintiff is held at WVDC as a pretrial detainee, his excessive force claims arise under the Due Process Clause of the Fourteenth Amendment.

///
///
///

---

[1] According to People v. O'Neal, 2009 WL 250932 (Cal. App., Feb. 4, 2009), the California Court of Appeal reversed plaintiff's conviction and remanded his case to the trial court for "a new competency hearing and, when appropriate, a new trial." Id. at *2. Thus, plaintiff is currently confined as a pretrial detainee. See Stow v. Murashige, 389 F.3d 880, 886 (9th Cir. 2004)("Although Stow remained in custody after the court reversed his conviction, his status was that of a pretrial detainee -- he was in custody pending his retrial on the counts of attempted second degree murder.").

5

## II. **PLAINTIFF FAILS TO ALLEGE A CLAIM FOR VIOLATION OF HIS FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION.**

In Claim One, plaintiff purports to state a claim under the First Amendment free exercise of religion clause. (Complaint, Attach. at 5.) The Court presumes that plaintiff's claim rests on his allegations that, on two occasions, Deputies Bailey and Cumbess refused to notify the kitchen that eggs were mixed with plaintiff's food, and on one occasion, Deputy Franco refused to notify the kitchen that it had sent plaintiff a non-vegan meal. (Complaint, Attach. at 1, 2.)

A prison inmate retains his First Amendment right to freely exercise his religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987); Cruz v. Beto, 405 U.S. 319, 322 & n.2, 92 S. Ct. 1079, 1081 & n.2 (1972). Inmates' First Amendment rights, however, are limited by the loss of freedom intrinsic to incarceration and by the penological objectives of the institution. O'Lone, 482 U.S. at 348, 107 S. Ct. at 2404. Thus, an inmate pursuing a Section 1983 claim for violation of his First Amendment free exercise rights must show that defendants burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See* Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008)(applying the test set forth in Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254 (1987)). Further, the Ninth Circuit has held that, to implicate the Free Exercise Clause, plaintiff must show that defendants' restriction burdened a belief that is "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); *see* Shakur, 514 F.3d at 885 (adopting the "sincerity test" set forth in Malik and

rejecting Ninth Circuit case law requiring the belief at issue to be a central tenet of the inmate's religion).

Plaintiff alleges that he is a Christian and a participant in the prison's Religious Diet program. (Complaint at 5.) Plaintiff, however, nowhere alleges any connection between his veganism and his Christian beliefs. Although plaintiff need not show that his veganism is central to his faith (*see* Shakur, 514 F.3d at 885), a free exercise of religion claim "must be rooted in religious belief, not in 'purely secular' philosophical concerns." Malik, 16 F.3d at 333 (*internal quotation marks and citations omitted*); *see* Johnson v. Moore, 948 F.2d 517, 520 (9th Cir. 1991)(failure to provide inmate with vegetarian diet did not violate his free exercise of religion rights absent evidence that his vegetarianism was rooted in his religious beliefs).

Accordingly, plaintiff's First Amendment's free exercise claim must be dismissed.[2]

### III. **PLAINTIFF FAILS TO ALLEGE A DUE PROCESS CLAIM FOR INADEQUATE MEDICAL CARE.**

In Claim Two, plaintiff contends that defendants failed to provide him with adequate mental health treatment, in violation of his Eighth

---

[2] The Court notes that plaintiff has alleged the same claim, based on similar incidents in 2009, in the action captioned O'Neal v. San Bernardino Sheriffs, EDCV 09-2297-DDP (MAN), and the Court has advised him of the same deficiency in his claim. If plaintiff is unable to allege *all* elements of a free exercise of religion claim in his First Amended Complaint, the Court will recommend that the claim be dismissed, without leave to amend.

7

Amendment rights.³ (Complaint, Attach. at 4.) As previously noted, because plaintiff is held at WVDC as a pretrial detainee, his claim arises under the Due Process Clause of the Fourteenth Amendment. Nevertheless, the Eighth Amendment serves as a benchmark for evaluating plaintiff's Fourteenth Amendment claim. *See* Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

A prisoner asserting a Section 1983 claim for denial of medical care must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds* by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en banc). Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060.

The medical needs covered by the Eighth and Fourteenth Amendments include mental health needs. Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). The constitutional requirements for mental health needs are the same as for physical health needs, *i.e.*, the mental health needs must be serious and the plaintiff must show deliberate indifference. *Id.* As with physical health needs, the "routine

---

³ Plaintiff does not contend that the medical care he received for his physical injuries was inadequate.

discomfort" that results from incarceration and is "part of the penalty that criminal offenders pay for their offenses against society" does not constitute a "serious" medical need. Doty, 37 F.3d at 546.

Plaintiff has not alleged deliberate indifference on the part of the named defendants, and it appears that he cannot do so.[4] Plaintiff complains that WVDC does not provide mental health counseling specifically tailored to victims of beatings by deputies. Even assuming, *arguendo*, that such counseling was constitutionally required, the failure to provide it could not be a basis for liability against the defendant deputies, who are not responsible for determining the scope of mental health services provided by WVDC. *See* Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988)(deliberate indifference inquiry must be individualized and must focus on the duties and responsibilities of each individual defendant). There is no indication that defendants prevented plaintiff from receiving mental health treatment. McGuckin, 974 F.2d at 1060. According to the Complaint, plaintiff was interviewed by mental health staff, who determined that he did not meet the criteria for mental health care. (Complaint, Attach. at 4.) Defendants had nothing to do with this determination.

---

[4] It also is unclear that plaintiff can allege the requisite serious medical need. Plaintiff does not contend that he has a mental illness requiring treatment. Rather, he contends that he suffered certain symptoms -- stress, insomnia, depression and fear -- as a result of the beating inflicted by defendants on June 28, 2010, and should have been provided with mental health treatment for them. (Complaint, Attach. at 4.) These allegations do not appear to rise to the level of a serious medical need. *See* Doty, 37 F.3d at 546 (inmate's nausea, shakes, headache, and depressed appetite were stress-related ailments resulting from incarceration did not constitute a serious medical need).

9

1    Accordingly, plaintiff fails to state a due process claim based on
2    the deliberate indifference to provide him with adequate mental health
3    care.[5]

### IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE SHERIFF'S DEPARTMENT.

Plaintiff names the Sheriff's Department as a defendant. (Complaint at 3.)

To allege a Section 1983 claim against an individual defendant, a plaintiff need only allege a constitutional deprivation inflicted on him by that defendant. To allege a Section 1983 claim against a local governmental entity such as the Sheriff's Department, more is needed. Plaintiff must allege a constitutional deprivation *and* a policy, custom,

---

[5] It is unclear whether plaintiff intends to assert a Section 1983 claim based on his allegations that Deputy Bailey may have eavesdropped on one of plaintiff's interviews with clinician Giselle. (*See* Complaint, Attach. at 5.) If so, any such claim fails. First, although some circuits have done so, the Ninth Circuit has not recognized a constitutional right of privacy in prisoners' medical information. *See* Seaton v. Mayberg, 610 F.3d 530, 534-35 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1534 (2011). Second, even assuming the existence of such a right, plaintiff does not allege that Deputy Bailey overheard and disseminated sensitive medical information. *See* Klein v. MHM Correctional Services, Inc, 2010 WL 3245291, *5 (D. Mass., Aug. 16, 2010)("assuming prisoners enjoy a constitutional right of privacy with respect to medical information, and assuming such a right could be implicated by disclosure of information only to other prison personnel and not to other prisoners or the public," such a right would pertain only to the disclosure of "intensely personal" information). Allegations that Deputy Bailey improperly eavesdropped on a mental health consultation fall far short of implicating any constitutional rights. *See* Low v. Stanton, 2009 WL 467584, *16 (E.D. Cal., Feb. 25, 2009)(guard present during plaintiff's medical visits entitled to summary judgment on medical privacy claim; the doctor-patient privilege "does not confer substantive constitutional rights on plaintiff"), *adopted by*, 2009 WL 21440 (E.D. Cal., March 30, 2009).

10

or practice of the municipality that was the "moving force" of the constitutional deprivation. Monell v. Department of Social Services, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037-38 (1978); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008); Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007).

A local governmental entity such as the Sheriff's Department "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694, 98 S. Ct. at 2037-38. Thus, a local governmental entity is not liable for the acts of its employees unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or unless the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91, 98 S. Ct. at 2035-36.

Here, the Court has concluded that plaintiff's allegations are sufficient to allege excessive force claims against the individual defendants under the Fourteenth Amendment's Due Process Clause. The Complaint, however, is devoid of allegations regarding any official policy, custom, or practice pursuant to which the individual defendants inflicted the allegedly excessive force. *See* Monell, 436 U.S. at 690-

91, 694, 98 S. Ct. at 2035-36, 2037-38; <u>Karim-Panahi</u>, 839 F.2d at 624. Plaintiff, therefore, fails to state an excessive force claim against the Sheriff's Department.

With respect to plaintiff's free exercise of religion and inadequate mental health care claims, the Court has already concluded that plaintiff has failed to allege that he was deprived of a constitutional right. There can be no <u>Monell</u> liability on the part of the Sheriff's Department when there was no constitutional violation. *See* <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986)(deficient policy cannot support <u>Monell</u> liability when there has been no constitutional harm); <u>Villegas</u>, 541 F.3d at 957 ("Because there is no constitutional violation, there can be no municipal liability.").

Accordingly, plaintiff's claims against the Sheriff's Department must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a First Amended Complaint that attempts to cure the defects in the Complaint described herein. The First Amended Complaint, if any, shall be complete in itself. It shall not refer in any manner to the original Complaint.

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

DATED: June 2, 2011

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE